**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| VALASSIE WALTERS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No.  3:25cv793 |
| | ) |
| DOVE STREET II, LLC, d/b/a | ) |
| HIGHLANDGROVE II, | ) |
| | ) |
| and | ) |
| | ) |
| LSA MANAGEMENT, LP | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

### I. INTRODUCTION

1.       Plaintiff Valassie Walters is an elderly, disabled woman who has rented her apartment at 2020 Althea Street since 2013.  On more than one occasion, Defendants interfered with Ms. Walters' fair housing rights by forcibly removing the handicap signs that were installed by the City of Richmond in front of her home. Defendants have further retaliated against Ms. Walters by attempting to evict her and wrongfully accusing her of lease violations.  These actions were discriminatory and retaliatory, and caused Ms. Walters great distress and inconvenience.

Plaintiff Valassie Walters brings this fair housing action against Defendants Dove Street II, LLC, d/b/a Highland Grove II ("Dove Street") and LSA Management, LP ("LSA," and collectively "Defendants") for disability discrimination, harassment, and retaliation in violation of the federal Fair Housing Act and the Virginia Fair Housing Law.

## II. JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 42 U.S.C. § 3613 in that the claims alleged herein arise under the Fair Housing Act. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are related to Plaintiff's federal law claim and arise out of a common nucleus of related facts, forming part of the same case or controversy under Article III of the United States Constitution.

3.    Venue is proper under 28 U.S.C. § 1391 in the United States District Court of the Eastern District of Virginia, Richmond Division, as a substantial part of the events or omissions giving rise to the claim occurred in this district

## III. PARTIES

4.    Plaintiff Valassie Walters is a 75-year-old woman with a disability as defined by the Fair Housing Act, 42 U.S.C. § 3602(h).  Ms. Walters resides in an

apartment owned by Defendant Dove Street II LLC.  Ms. Walters has a housing voucher that she uses to pay her rent.

5.      Defendant Dove Street II LLC ("Dove Street") is a Virginia limited liability company and owns the rental property located at 2020 Althea Street, Richmond, VA 23222. At all relevant times, Defendant Dove Street was the owner of the rental property described in this Complaint.  Upon information and belief, Defendant Dove Street owns approximately thirty rental properties. These rental properties qualify as "dwellings" under the Fair Housing Act, 42 U.S.C. § 3602(b).

6.      Defendant LSA Management, LP ("LSA") is incorporated in North Carolina. Defendant LSA manages the rental property located at 2020 Althea Street, Richmond, VA 23222. At all relevant times, Defendant LSA was responsible for the operation and management of the rental property described in this Complaint.

## IV.  FACTUAL ALLEGATIONS

7.      Plaintiff rents a townhouse-style apartment unit at 2020 Althea Street, Richmond, VA 23222 (the "Unit" or "2020 Althea Street").

8.      Plaintiff began renting the Unit in approximately 2013 and continues to live there as of the filing of this Complaint.

9.      Defendant Dove Street is the current owner of 2020 Althea Street.

10.     Defendant LSA is the current property manager of 2020 Althea Street.

11.     On information and belief, Defendant Dove Street contracts with Defendant LSA to manage 2020 Althea Street as well as the other nearby rental units in the community.

12.     Plaintiff has a Housing Choice Voucher to assist her with rent payments.  This voucher is administered by Richmond Redevelopment and Housing Authority (RRHA). Under this voucher program, Plaintiff pays approximately 30% of her income as rent; the remaining portion of her rent is paid by RRHA.

13.     On or about early 2023, Defendant Dove Street II purchased 2020 Althea Street, becoming the owner of Plaintiff's Unit.

14.     After purchasing the property, Defendant Dove Street hired Defendant LSA to manage 2020 Althea Street and the other units in the community.

15.     Defendant LSA was acting as Defendant Dove Street's agent at all times relevant to this lawsuit.

16.     Plaintiff has a handicap placard and license plate for her car so that she can access handicap parking to accommodate her inability to walk long distances.  Plaintiff's handicap tag identification number is P02278856.

17.     The units in Plaintiff's community do not have assigned parking, so Plaintiff must park her car on the city streets. There were no handicap-reserved

4

signs on Plaintiff's street that were close enough to her Unit that would prevent her from having a long distance after parking.

18.     On or around August 31, 2023, Plaintiff called the City of Richmond, Virginia 311 Citizen service line requesting the installation of a handicap sign on the street in front of her Unit.

19.     Plaintiff contacted the City of Richmond, as opposed to the Defendants, regarding the installation of a handicap sign in front of her Unit because the City of Richmond owns the street where the handicap sign would be installed. Defendant Dove Street and Defendant LSA do not own or manage the street or sidewalk where the handicap sign was to be installed and thus cannot authorize the installation of a handicap sign.

20.     Ms. Stacy Franklin, a City of Richmond employee in the Department of Public Works (DPW), was assigned the request to install a handicap sign on the street in front of the Plaintiff's unit. Plaintiff explained to Ms. Franklin that she had a Virginia Disabled License Plate, a Virginia handicap parking placard, and a DMV-issued Disabled Card, but did not have handicap parking close enough to her Unit.

21.     To start the application process for a handicap sign near her Unit, on or around September 6, 2023, Ms. Franklin mailed Plaintiff the handicap sign application and other documents needed to fulfill the request.

5

22.    On or around September 29, 2023, Plaintiff returned the handicap sign application materials to Ms. Franklin to request that a handicap sign be installed in front of her Unit.

23.    On or around October 3, 2023, the City of Richmond installed a handicap sign on the city street in front of the Plaintiff's Unit.

24.    The same day, Ms. Kimberly McCloud, a property manager for LSA appeared at the Plaintiff's apartment with three maintenance workers.

25.    While at Plaintiff's doorstep, LSA's staff told Plaintiff that they were taking down the Plaintiff's handicap sign because she was "not allowed to have it."

26.    Plaintiff protested and informed LSA's staff that the City had approved her handicap parking sign due to her disability.

27.    Despite Plaintiff's protests, on or around October 3, 2023, LSA's maintenance worker removed the handicap sign that had been installed by the City of Richmond, on the City of Richmond's Property, for the benefit of Plaintiff.

28.    The sign was the property of the City of Richmond and installed on City Property; it was not the property of LSA or Dove Street nor was it installed on their property.

29.    The sign was lawfully placed by the City of Richmond to help mitigate the effects of the Plaintiff's disability caused by back injuries.

30.    Defendants had no legal right to remove the handicap signs.

6

31.    Defendants had no legal, non-discriminatory purpose to remove the handicap sign.

32.    Yet, despite all this, Defendants removed the handicap sign.

33.    Defendant LSA Management's leasing staff and maintenance workers verbally justified the removal of the handicap sign by telling Plaintiff that if they accommodated the Plaintiff and the Plaintiff's disability, "they would have to accommodate everyone."

34.    The same day LSA removed the handicap sign, on or around October 3,2023, LSA also issued the Plaintiff with a 30 day-termination notice alleging that the Plaintiff had several lease violations, including having an unauthorized pet and having an unauthorized occupant, and harassing other tenants and staff.

35.    The unauthorized pet referred to in the notice was Plaintiff's service dog, whom she had obtained a reasonable accommodation for in approximately January 2013.  The unauthorized occupant referred to in the notice was Plaintiff's son who stayed overnight with her on a few occasions. Plaintiff's lease does not have a visitor policy or any limitations on visitors.

36.    Defendant Dove street later filed an unlawful detainer case in Richmond City General District Court against Plaintiff for the alleged lease violations.  However, Defendant Dove Street subsequently non-suited the unlawful detainer case against Plaintiff.

7

37.    On or around October 4, 2023, the Plaintiff notified Ms. Stacy Franklin via phone call that her handicap sign had been removed in hopes of getting it reinstalled.

38.    On October 4, 2023, Ms. Franklin informed her Department of Public Works colleagues that the Defendant's maintenance staff had removed the handicap sign installed by their team in front of the Plaintiff's residence. Ms. Franklin instructed her colleagues at the Department of Public Works to re-install the handicap sign.

39.    On or around October 8, 2023, the Department of Public works reinstalled the handicap sign near the Plaintiff's unit.

40.    On or around January 11, 2024, LSA's maintenance again took down the handicap sign.

41.    Shortly thereafter, Plaintiff contacted Ms. Stacy Franklin via phone to inform her about the sign again getting removed.

42.    On or around January 22, 2024, via phone, Plaintiff reached out to Ms. Stacy Franklin again since the sign still had not been reinstalled after the January 11, 2024, removal. Plaintiff reiterated to Ms. Franklin that she was having a hard time parking directly in front of her Unit and therefore needed the sign reinstalled.

43.     On or around January 22, 2024, Ms. Franklin called LSA's leasing office and informed LSA that they needed to cease removing the handicap signs installed for the Plaintiff.

44.     On or around January 22, 2024, Ms. Franklin informed her colleague at the Department of Public works, Robert L. Roberts that the handicapped sign had been removed, told him that the removal of the handicap sign was unauthorized, and asked that he reinstall the handicap sign for the Plaintiff.

45.     On or around January 24, 2024, Ms. Franklin messaged her colleagues via email letting them know that the handicap sign installed in front of Plaintiff's Unit had been removed again.  In that same email, Ms. Franklin instructed her colleagues to reinstall the sign and that they would have to file a police report if it were removed again.

46.     On January 24, 2024, the City of Richmond Department of Public Works staff reinstalled the handicap sign near Plaintiff's Unit.

## V. LEGAL CLAIMS

### COUNT ONE

**Federal Fair Housing Act: Interference, Coercion, or Intimidation Injuring the Plaintiff – All Defendants**

38.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

9

39. Defendants injured Plaintiff by committing discriminatory housing practices in violation of the Fair Housing Act.

40. Defendants violated 42 U.S.C. § 3617 by interfering with the Plaintiff's access to her dwelling by intimidating her at her door soon after the handicap sign was installed on the city street, threatening to remove the sign, and actually removing the sign without authorization from the City of Richmond.

41. Plaintiff is a protected individual under the fair housing act because she has a qualifying disability.

42. Plaintiff engaged in the protected activity of having a handicap sign installed by the City of Richmond close to her housing unit so that she can access it given her disability-related needs.

43. Defendants were aware the Plaintiff had a disability that warranted the installation of the handicap sign but opined that "they didn't want her to have it, otherwise everyone would request it."

44. Defendants intimidated Plaintiff at her door and told her she could not have the handicap sign that was installed by the City of Richmond. Defendants further interfered with that right when they removed the handicap sign on multiple occasions without the City's permission or approval.

45. Plaintiff suffered economic and non-economic damages due to the hostile housing action she faced from the Defendants.

10

46.    Defendants' actions demonstrated a willful and gross disregard for Plaintiff's fair housing rights.

47.    Defendants' violations entitle Plaintiff to an award of actual damages, punitive damages, injunctive relief, attorney's fees, and costs. 42 U.S.C.§ 3613 (2023).

## COUNT TWO

**Virginia Fair Housing Law: Interference, Coercion, or Intimidation Injuring the Plaintiff – All Defendants**

48.    Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

49.    Defendants violated Va. Code §36-96.5 and 18 VAC 135-50-220 by interfering with the Plaintiff's access to her dwelling by intimidating her at her door soon after the handicap sign was installed on the city street, threatening to remove it, and actually removing the City-installed handicap sign on multiple occasions.

50.    Plaintiff is a protected individual under the fair housing act by having a disability.

51.    Plaintiff engaged in the protected activity of having a handicap sign installed by the City of Richmond close to her housing unit so that she can access it given her disability-related needs.

11

52.     Defendants were aware the Plaintiff had a disability that warranted the installation of the handicap sign but opined that "they didn't want her to have it, otherwise everyone would request it."

53.     The Defendants intimidated Plaintiff at her door and told her she could not have the handicap sign that was installed by the City of Richmond. The Defendants subsequently interfered with that right when they removed the handicap sign on multiple occasions without the city's permission or approval.

54.     Plaintiff suffered economic and non-economic damages due to the hostile housing action she faced from the Defendants.

55.     Defendants' actions demonstrated a willful and gross disregard for the Plaintiff's fair housing rights.

56.      Defendants' violations entitle the Plaintiff to an award of actual damages, punitive damages, injunctive relief, attorney's fees, and costs. 42 U.S.C.§ 3613 (2023).

**COUNT THREE**

**Violation Of The Virginia Residential Landlord And Tenant Act Prohibition Against Retaliation**

57.     Plaintiff realleges and incorporates by reference each paragraph previously alleged in this complaint.

58.     Under Va. Code Sec. 55.1-1258, a "landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an

12

action for possession or by causing a termination of the rental agreement pursuant to § 55.1-1253 or 55.1-1410 after he has knowledge that (i) the tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health or safety, (ii) the tenant has made a complaint to or filed an action against the landlord for a violation of any provision of this chapter..."

59.     Defendants' agents or employees proceeded to retaliate against after she had accused them of violating the state and federal fair housing act in her responsive pleading to their eviction filing.

60.     Defendants retaliated by, *inter alia*, sending Plaintiff lease violation notices and removing her handicapped parking signs.

61.     As a result of Defendants' retaliatory acts, Plaintiff is entitled to recover actual damages.

## VI. RELIEF

WHEREFORE, Plaintiff prays for entry of a judgment against the Defendants that:

1. Awards compensatory damages pursuant to Plaintiff's FHA claim;

2. Awards punitive damages pursuant to Plaintiff's FHA claim;

3. Awards compensatory damages pursuant to the plaintiff's VFHL claim;

4. Awards punitive damages pursuant to the Plaintiff's VFHL claim;

5.  Awards actual damages pursuant to the Plaintiff's VRLTA claims;

6.  Enjoins all unlawful practices alleged in this complaint and imposes affirmative injunctive relief requiring the defendant, their contractors, agents, employees, assignees, and any other person acting in concert or participating with them to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of disability;

7.  Awards Plaintiff costs of suit, including reasonable attorneys' fees; and,

8.  Awards all such other relief as the Court deems just.

## VII.  JURY DEMAND

Plaintiff demands trial by jury.

Dated: September 26, 2025                Respectfully submitted,

/s/ Rachel Nadas
Rachel Nadas, VSB No. 89440
Matthew K. Handley, *pro hac vice forthcoming*
HANDLEY FARAH & ANDERSON PLLC
1050 Connecticut Avenue NW, Suite 500
Washington, DC 20036
rnadas@hfajustice.com
(202) 899-2991

Moriah J. Wilkins (VSB No. 97286)
Mwilkins@homeofva.org.
Brenda Castaneda (VSB No. 72801)
Bcastaneda@homeofva.org

14

Housing Opportunities Made Equal
of Virgnia, Inc.
1601 Rolling Hills Drive, Suite 110
Richmond, VA 23229
P.O. Box 26120
Richmond, VA 23260
Phone: (804) 905-6793
Fax: (804) 354-0690

15